UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PHILIP EUGENE GURZI, | Case No. 18-CV-3104-NEB-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| WARDEN R. MARQUES, | |
| Defendant. | |

Philip Gurzi, an inmate at the federal prison in Sandstone has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. He challenges the Bureau of Prison's ("BOP") determination that he is ineligible for a sentence reduction following his completion of the Residential Drug Abuse Program ("RDAP"). Specifically, he alleges that BOP regulations and program statements that exclude people who possessed firearms during their underlying criminal cases from receiving early release as contemplated by the RDAP program violate the Administrative Procedures Act ("APA"). For the reasons set forth below, the Court finds that Mr. Gurzi's challenge to the BOP's decision is without merit, and recommends that his petition be denied.

   I.   Factual Background

In 2015, Philip Gurzi was convicted in the District of Minnesota of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and sec 846. At

1

his sentencing, the district court applied a two-level sentencing-guidelines enhancement because it found that Mr. Gurzi had possessed both ammunition and a firearm during the course of his offense. (Cruz Decl. ¶ 9, ECF No. 7.) He was sentenced to a term of imprisonment of 150 months, though it was later reduced to 100 months for reasons unrelated to the present petition. He is currently projected to complete his federal sentence in October of 2021. (*Id.* ¶ 2.)

In February, 2017, the Bureau of Prisons conducted a review to determine whether Mr. Gurzi would be eligible for early release pursuant to 18 U.S.C. § 3621(e) and the RDAP. Both upon initial consideration by a paralegal and upon review by an Assistant General Counsel for the BOP, it was determined that Mr. Gurzi is not eligible for the time off of his sentence due to the nature of his federal offense. (Cruz Decl. ¶¶ 12–13.) Specifically, because Mr. Gurzi's sentence had been enhanced due to his possession of ammunition and a firearm during the drug conspiracy, the BOP found that he was ineligible for release. In reaching this conclusion, the BOP applied regulations found at 28 C.F.R. § 550.55(b)(5) and Program Statement 5162.05. (*Id.*)

The BOP has an administrative-remedy process by which Mr. Gurzi could have challenged its determination regarding his ineligibility for the RDAP sentence reduction. (Gov't Resp. at 5–6, ECF No. 6.) Mr. Gurzi did not avail himself of this process, and appears not to have appealed the BOP's decision through any of the steps contemplated by the BOP's grievance procedures. (Cruz Decl. ¶15)

## II. Exhaustion of Remedies

The BOP urges the Court to dismiss Mr. Gurzi's petition because he failed to exhaust his administrative remedies by challenging the RDAP-eligibility decision through the BOP's appellate process before seeking habeas relief. (Gov't Resp. at 7–9.) Mr. Gurzi candidly concedes that he failed to pursue the issue within the BOP before coming to this Court. (*E.g.*, Pet. at 2–3, ECF No. 1; Traverse at 4–5, ECF No. 11.) However, he argues that exhausting remedies in this matter would be futile due to the nature of his challenge. Specifically, he notes that he is not challenging any factual assessments the BOP made regarding his case, seemingly conceding that his sentence was enhanced for possession of a firearm as determined by the BOP. Instead he is challenging the authority of the BOP to adopt regulations and a policy statement that categorically preclude someone who received such an enhancement from receiving the RDAP sentencing enhancement.

The Court agrees with the Bureau that the requirement that an inmate exhaust their administrative remedies is an important one that serves valuable goals. (Govt's Resp. at 6..) Nonetheless, the Court observes that it has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate. *See, e.g., Leuth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (explaining that the exhaustion requirement is "judicially created, not jurisdictional"); *Whentworth v. Fisher*, No. 10-cv-2270 (JNE/JSM), 2011 WL 5077612, at *5 (D. Minn. Oct. 7, 2011) (noting that because exhaustion is not a jurisdictional prerequisite, "a court may exercise its

3

discretion to decide a petition on its merits, even if a prisoner has not exhausted his administrative remedies"), *R&R adopted*, No. 10-cv-2270 (JNE/JSM), 2011 WL 5078870 (D. Minn. Oct. 26, 2011).

In this case, the Court declines to recommend dismissal of this petition on the grounds of failure to exhaust for two reasons. Most importantly, Mr. Gurzi's Petition has been pending before the Court for a substantial length of time. Although Mr. Gurzi's current release date is still more than two years in the future, dismissing his petition and requiring him to exhaust his remedies and then bring his challenge back to the Court would risk depriving him of judicial review at all.

Second, one of the important functions served by exhaustion of remedies, the development and crystallization of the factual record, *Donnelly v. Fed. Bur. of Prisons*, No. 10-cv-3105 (DWF/JSM), 2012 WL 2357511, at *3 (D. Minn. May 30, 2012), *R&R adopted*, No. 10-cv-3105 (DWF/JSM), 2012 WL 2357490 (D. Minn. June 20, 2012), is not implicated in this case. Mr. Gurzi is correct that his challenge does not address any factual decisions the BOP made which are unique to his case. Instead he challenges the policy adopted by the BOP at a national level to deny early release to an entire category of people. In light of the nature of the issue raised by his petition, the Court can make its decision on the record before it without need for further development below.

### III. Analysis

In his petition and its various supporting memoranda, Mr. Gurzi essentially raises three challenges to the BOP's determination that he is ineligible for the RDAP sentencing reduction. First, he argues that the regulations at issue are irrational because the "public safety rationale" on which they are based is unsupported and was contradicted by evidence before the agency. Second, he suggests that the BOP's interpretation of the statute contradicts express Congressional "intent to reduce recidivism among substance abusers." Finally, he suggests that the First Step Act changes the relevant analysis and requires invalidation of the BOP's decision. Unfortunately for Mr. Gurzi, none of these arguments carry the day.

#### A. The Regulations Are Not Arbitrary and Capricious.

The Administrative Procedures Act, upon which Mr. Gurzi bases his claim, enables this Court to review the decisions of federal agencies, such as the Bureau of Prisons, to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Lopez v. Davis*, 531 U.S. 230, 239 (2001) (applying an "arbitrary and capricious" standard to review the BOP's interpretation of § 3621(e)). This standard is highly deferential. The question is not whether there are valid interpretations of the statute at issue other than the one adopted by the agency, or even whether those readings may be more reasonable. Instead, the issue is whether the regulation reflects "a permissible construction of the

statute." *Chevron v. U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

This Court is bound by controlling precedent, from both the Supreme Court and the Eighth Circuit, which rejects APA-based arguments indistinguishable from the one being raised by Mr. Gurzi. In *Lopez v. Davis*, the Supreme Court found that the BOP's decision to preclude inmates who had received the firearms sentencing enhancement was reasonable. *Lopez*, 531 U.S. at 244 ("We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions."). And in *Gatewood v. Outlaw*, the Eighth Circuit rejected the argument that the BOP's regulations regarding exclusion from sentence-reduction eligibility were adopted based on an inadequate rationale and therefore ran afoul of the APA. 560 F.3d 843, 848 (8th Cir. 2009). The *Gatewood* court concluded that the BOP's decision regarding ineligibility was squarely based on a public-safety rationale and observed that the Supreme Court in *Lopez* had already determined that rationale to be "substantively reasonable." *Id.*; *see also Stevenson v. FCI Waseca*, 383 Fed. App'x 587, 587–88 (8th Cir. 2010). Mr. Gurzi is unable to point the Court to any basis for rejecting this controlling precedent. *See Williams v. Marques*, No. 18-cv-3055 (JRT/ECW), 2019 WL 446570, at *2 (D. Minn. Feb. 4, 2019) (considering a virtually identical argument and observing that the court remains bound by *Lopez*, *Gatewood* and *Stevenson*).

**B. The Regulations Do Not Contradict Congressional Intent**

Mr. Gurzi acknowledges the weight of the caselaw against him, but invites this Court to revisit the issue based in part on data that is either new or that, according to Mr. Gurzi, was not given adequate weight by the BOP in its initial decision making. Specifically, Mr. Gurzi notes that recent data collected in the BOP's 2014 Program Directory[1] demonstrates the efficacy of drug treatment in general and RDAP specifically in reducing recidivism. Further relying on legislative history surrounding the adoption of the BOP's drug treatment programs, he observes (correctly) that Congress passed § 3621(e) due to its belief that drug treatment could reduce future crime. (Pet'r Mem. at 8–10.) Therefore, Mr. Gurzi claims that the new data to which he points proves that the BOP's decision not to "incentivize" certain inmates to participate in the program with the hope of earning a sentencing reduction squarely contradicts Congressional intent. There are at least three problems with this argument.

First, although Mr. Gurzi points to new data to support his challenge to the regulations, there is nothing to meaningfully distinguish it from the arguments made by the petitioners in the two decades of decisions that tie the hands of this Court. As the *Lopez* Court concluded: "The Bureau reasonably concluded that an inmate's prior

---

[1]  Federal Bureau of Prisons, Custody & Care, Substance Abuse Treatment, https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp (last visited October 9, 2019); (Pet'r Mem. at 7–8, ECF No. 2).

7

involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision." *Lopez*, 531 U.S. at 244. Mr. Gurzi's eloquent reference to the dissenting opinion from Lopez does not enable the Court to disregard the binding impact of the majority's ruling in that case. (Pet'r Mem. at 9.)

Second, Mr. Gurzi's data-based argument misapprehends the extent and nature of the Court's review of an agency decision under the APA. This Court must determine whether the BOP's regulations are reasonable, not whether they are the most reasonable, adopting a "principle of deference to administrative interpretations." *Chevron*, 467 U.S. at 844. The new data might support an argument that the BOP should use its discretion in a different way, but it does not render its exercise of that discretion unreasonable, arbitrary or capricious. *See Williams*, 2019 WL 446570, * 2 ("The BOP's concerns about nonviolent gun offenders are not rendered unreasonable by evidence of reduced recidivism among the general population of offenders upon completion of RDAP.").

Third, as the respondent correctly observes, the regulations Mr. Gurzi challenges do not prevent him from participating in RDAP, or in the other treatment opportunities available within the prison system. (Govt's Mem. at 14.) The fact that inmates who do not qualify for the sentencing reduction under the BOP's interpretation of the statute can still participate in programming that addresses issues

of addiction demonstrates that the BOP's administration of the RDAP program is consistent with Congressional intent.

For these reasons, Mr. Gurzi's invitation to disregard *Lopez* and its Eighth Circuit progeny must be declined.

### C. The First Step Act Does Not Require A Different Result

Finally, Mr. Gurzi argues that the newly adopted First Step Act ("FSA")[2] requires invalidation of the regulation at issue because the Act mandates the creation of new programs within the BOP and includes provisions regarding eligibility for those programs. Mr. Gurzi is incorrect that the FSA has changed the landscape regarding eligibility for the RDAP sentencing reduction.

First, the FSA did not amend 18 U.S.C. § 3621(e), or the regulations found at 28 C.F.R. ¶ 550.55(b) implementing RDAP. It is true that FSA requires the BOP to adopt programs designed to reduce recidivism, that those programs may include drug treatment, and that successful completion of the new programs may be rewarded by sentencing reductions. But a statute that mandates the creation of new programs neither requires nor enables this Court to order the BOP to allow Mr. Gurzi a sentencing reduction for participation in a pre-existing program that the new law did not affect in any way. *See Williams*, 2019 WL 446570, *2.

---

[2] *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018).

Second, although the FSA will lead to the development of positive new BOP programming designed to reduce recidivism, those programs will not be implemented until January of 2020. (Gov't Resp. to Surreply at 2–3, ECF No. 12.) It is far too early to assess whether those programs will overlap with the RDAP program, and how the BOP will determine eligibility for those programs.[3]

In sum, the FSA does not provide a basis for this Court to conclude that the BOP's RDAP regulations are arbitrary and capricious.

## RECOMMENDATION

For the reasons set forth above, **IT IS HEREBY RECOMMENDED THAT** Mr. Gurzi's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 **(ECF No. 1)** be **DENIED** and this matter be **DISMISSED WITH PREJUDICE**.

Date: October 10, 2019　　　　　　　　　　　*s/Katherine Menendez*
　　　　　　　　　　　　　　　　　　　　　　Katherine Menendez
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to

---

[3]　　Indeed, if the First Step Act argument alone formed the basis for Mr. Gurzi's habeas petition, the Court would certainly recommend its denial for failure to exhaust administrative remedies. The Bureau of Prisons should have the first opportunity to assess Mr. Gurzi's eligibility for any newly developed programs and the Court cannot begin to address a challenge to a denial that has not yet been issued.

10

those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).